24 C.C.P.A.(Patents)

**In re PFLEGER et al.**

**Patent Appeal No. 3828.**

Court of Customs and Patent Appeals.
June 7, 1937.

Eugene C. Taylor, of Washington, D. C. (John Flam, of Los Angeles, Cal., of counsel), for appellants.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application for patent here involved relates to a bearing structure. All the claims, six in number, were rejected by the Examiner whose decision was affirmed by the Board of Appeals of the United States Patent Office. Appellants thereupon brought the decision of the latter to this court for review.

The claims are numbered 6, 8, 16, 28, 29, and 30. There is disclosed a structure containing a shaft, enclosed in a housing, the shaft being surrounded with a series of rolling elements or balls which constitute the bearing. The housing is provided on one side with an inlet passageway for the injunction of the lubricant and an outlet passageway on the other side for its ejection. The inlet and outlet openings are closed by plugs. When it is desired to inject fresh lubricant, the plugs are removed and the grease forced into the inlet passageway by air pressure, or the like. This pressure forces the grease around the bearing "axially" and also forces the worn grease out through the outlet passageway. We quote claim 28 as illustrative of claims 6, 8, 28, and 30: "28. In a bearing structure for an electric motor shaft, a bearing, said bearing including a series of rolling elements, a housing surrounding said bearing, a body of plastic lubricant retained therein, said housing having an inlet and an outlet for passing lubricant into and out of said housing and around the bearings, means for normally retaining said lubricant around the bearings and in the housing, said inlet and outlet being accessible from outside the housing and so arranged with respect to the bearing that said inlet and outlet together with said bearing and said bearing housing form a continuous path whereby substantially all the lubricant initially retained in said housing may be expelled from said housing in response to a pressure exerted through said inlet."

In addition to the structure already described, there is disclosed a seal means structure which is embraced in claim 29 in combination with the bearing structure. This claim reads: "29. The structure as set forth in claim 28, in which said means for normally retaining said lubricant within said housing includes means surrounding the shaft for forming a multiple seal, and in which additional means are provided for the discharge of lubricant escaping past said multiple seal, said means including a receptive chamber for collecting said escaped lubricant and a passageway terminating exterior of said bearing housing for the discharge of said escaped lubricant."

The references cited are: Wallgren, 1,-607,222, Nov. 16, 1926; Brunner, 1,638,521, Aug. 9, 1927; Buckwalter, 1,748,972, Mar. 4, 1930; Bock, 1,823,422, Sept. 15, 1931.

It may be said that claim 30 is drawn to substantially the same structure as claims 6, 8, and 28, but defines the bearing housing as being provided with a pair of lubricant retaining chambers positioned at opposite sides of the bearing.

Claims 6, 8, 28, and 30 stand rejected on the patent to Bock in view of Brunner, or, alternatively, on Brunner in view of Bock.

The Bock patent is entitled "Rear Axle Wheel Bearing Lubrication." It is designed for the use of a semisolid lubricant, or grease, and shows a housing with roller bearings journaled between races carried by the axle and the housing. It is provided with inlet and outlet passageways arranged at opposite sides of the shaft.

The patent to Brunner is entitled "Anti-friction-Bearing Lubrication" and is one in which oil is used as the lubricant. It shows a rotatable shaft in a housing, the shaft and housing arranged to support bearing rings, or races, with balls between the rings. Above the shaft is a chamber for holding oil. From the bottom of the chamber a tube extends downwardly into the housing. The tube is equipped with a filtering device shown in the form of a wick by means of which the lubricant is fed to a rotary part located between the inner rings of the bearing. In the lower portion of the housing there are outlet means.

It was the view of the tribunals of the Patent Office that there would be no invention in modifying the structure shown by Brunner so that there might be used therein the semisolid lubricant, or grease, whose use is taught by Bock, or, conversely, that it would not require other than mechanical skill to modify the structure of Bock by arranging the inlet and outlet

passageways in such manner that the grease would be forced axially around or through the bearing members.

On behalf of appellants it is argued as to the Brunner patent that it was designed for the use of oil and that patentee had no thought of filling a lubricant chamber with grease and confining the same in the chamber until it was worn out and then forcing it out by pressure used in connection with replenishing with fresh grease. It is conceded that the oil in Brunner's device moves axially of the shaft, but urged that he had no intention to take advantage of such movement for cleansing the bearing of the used lubricant, or for forcing anything else out of the bearing, "as dust or metal particles worn off from the bearing elements." We may here say, although the matter is not regarded by us as being important, that we do not find any teaching in appellants' application relating to the forcing of dust or metal particles from the housing. Like the claims, the specification is limited to cleaning the used lubricant from the bearings.

The argument respecting the Bock patent relates principally to the arrangement of the inlet and outlet passageways. It is said that in Bock's device these members are not arranged with reference to the shaft so that the lubricant is forced axially the shaft when fresh grease is introduced into the housing. The specification of appellant teaches that his inlet passageway is located in the top of his housing and his outlet passageway in the bottom thereof, but no one of the claims is so limited. So far as the claims are concerned, they are met by passageways on opposite sides the shaft, if those passageways, together with the bearing, form a continuous path whereby the used lubricant is expelled, and even this latter limitation, found in claim 28, supra, is not specific in all the claims.

As we view the case, the issue as to claims 6, 8, 28, and 30 is reduced to the question of whether it involved invention to place the inlet and outlet passageways in such relationship that the result of ejecting the used grease in the manner described was obtained, and careful consideration of the structure of appellants in the light of the prior art cited, taken together with common knowledge of the nature of bearing lubricants, leads us to the same conclusion reached by the tribunals of the Patent Office.

As to claim 29, the Examiner said: "Claim 29 sets forth the structure of claim 28 and in addition includes a specific sealing means. The examiner holds that this claim is unpatentable for the reason that it is drawn to an aggregation of unrelated elements. There is no necessary or special cooperation between the specific bearing assembly with its lubricating means and the specific sealing means set forth in this claim. They do not cooperate to produce a unitary result. No reason is seen why the specific seal set forth by this claim could not be used equally as well with entirely different forms of bearing assemblies, if desired. In fact, it is thought that applicant's own disclosure supports the examiner's position in that Figs. 1 and 2 show that the same bearing assembly may be used with entirely different and distinct forms of seals. Seals have long since reached a separate and distinct status in the arts and are separately classified and searched. It is accordingly thought that applicant's seal is a separate and distinct invention."

In affirming the decision as to this claim, the Board said: " * * * we agree with the examiner that there is no patentable combination between a specific seal and a specific bearing lubricating means, where each performs its own function only."

The contentions on behalf of appellants with respect to this claim have been quite carefully studied in the light of the authorities cited, but the position taken by the tribunals of the Patent Office seems to us to be sound as a matter of law. No interrelationship of elements of the bearing structure with elements of the specific sealing structure described, which brings the joining of the two entities within the meaning of a true combination in the sense of the patent laws, is shown. Appellants have simply brought together two distinct and complete devices, each of which may function for its purpose independent of the other, and each of which, even when they are joined, performs only its particular independent function.

A somewhat unusual situation exists with reference to claim 16 which defines a seal for a shaft. The Examiner required division between it and the group consisting of claims 6, 8, 28, and 30. This requirement was submitted to the Examiner of Classification who approved it "provided Claim 29 is not allowed." There was no appeal to the Board as to this requirement, but in the Examiner's statement following the appeal the claim was considered and held rejectable upon the patent to Wallgren in view of Buckwalter. The Examiner stat-

ed that this action was taken "In order that the answer may be complete in the event that claim 29 is subsequently held to be allowable."

The Board made no reference to claim 16 in its decision, and it seems to be conceded that a necessity for our considering it could arise only from an allowance by us of claim 29. Since, therefore, we do not regard claim 29 allowable, we need give no further attention to claim 16.

The decision of the Board of Appeals is affirmed.

Affirmed.